**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Jerry Florian, et al., | ) | No. 05-CV-2067-PHX-FJM |
| | ) | |
| Plaintiffs, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Jason Perkinson, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

The court has before it a motion for partial summary judgment by defendants Town of Quartzsite, Jason Perkinson, William Ponce, Edwin Jaakola and Daniel Field (collectively the "Town Defendants") (doc. 65), plaintiffs' response (doc. 68), and the Town Defendants' reply (doc. 70). We also have before us the Town Defendants' motion for summary judgment on the remaining claims (doc. 79), plaintiffs' response (doc. 92), and the Town Defendants' reply (doc. 91). Finally, we have defendant La Paz County Attorney R. Glenn Buckelew's motion for summary judgment (doc. 77),[1] plaintiffs' response (doc. 85), and Buckelew's reply (doc. 87).

---

[1]Although this motion is also brought on behalf of La Paz County Attorney Martin Brannan and La Paz County, we note that these defendants are dismissed from the case (doc. 39).

# I.  Background

Jerry Florian ("Florian"), Jacquelyn Dunckhurst, and four members of Florian's family, Fay Rogers, Donna Payne, Sarah Florian and Zachary Florian,[2] filed this action claiming that Quartzsite police officers Jason Perkinson and William Ponce participated in an ongoing campaign of harassment against them, which Ed Jaakola, the Quartzsite Chief of Police, knew about and failed to prevent.  Florian claims that the officers intimidated and harassed him, frequently stopping him based on fabricated traffic infractions.  He was arrested on several occasions, and on one occasion his companion, Jacquelyn Dunckhurst, was also arrested. Florian and Dunckhurst claim that the officers prepared false police reports to support the arrests, and offered perjured testimony before grand juries in order to obtain criminal indictments.  Although several grand jury indictments were issued, all charges were ultimately dismissed without prejudice and no prosecutions were pursued.

Plaintiffs filed this action against the Town Defendants and La Paz County Attorney Glenn Buckelew, alleging, among other things, deprivation of constitutional rights pursuant to 42 U.S.C. § 1983, and state law claims of false imprisonment, intentional infliction of emotional distress, assault and battery, failure to properly hire, train, and supervise, defamation, and conspiracy.[3]

---

[2]All plaintiffs are appearing *pro se* including Zachary Florian who is a minor represented by his mother, Sarah Florian, as guardian ad litem.  At the Rule 16 scheduling conference, on March 31, 2006, over twelve months ago, we informed Ms. Florian of the potential need for a lawyer to represent a minor.  Although Ms. Florian may represent Zachary's non-legal interests, she has no authority to represent him as his lawyer.  See, e.g., Johns v. County of San Diego, 114 F.3d 874, 877 (9th Cir. 1997) (holding that "a parent or guardian cannot bring an action on behalf of a minor child without retaining a lawyer"). Because neither Zachary nor his guardian is represented by a lawyer, we dismiss the claims asserted by Sarah Florian as guardian ad litem for Zachary Florian.

[3]Plaintiffs now concede that they cannot support their defamation or conspiracy claims, Plaintiffs' Response (doc. 92) at 11-12, and accordingly these claims are dismissed on this alternative basis.

1

**II.  State Law Claims**

2      The Town Defendants and Buckelew argue that the state law claims are barred because

3 plaintiffs failed to comply with the notice requirements of A.R.S. § 12-821.01(A).  Under

4 section 12-821.01(A), a plaintiff with a claim against a public entity or public employee must

5 first file a notice of claim with the person authorized to accept service on behalf of that entity

6 or employee within 180 days after the cause of action accrues.  Compliance with the notice

7 provision is a "mandatory and essential prerequisite," <u>Martineau v. Maricopa County</u>, 207

8 Ariz. 332, 334, 86 P.3d 912, 914 (Ct. App. 2004), and a plaintiff's failure to comply bars any

9 claim.  <u>Falcon v. Maricopa County</u>, 213 Ariz. 525, 527, 144 P.3d 1254, 1256 (2006).  The

10 notice requirement serves "to allow the public entity to investigate and assess liability, to

11 permit the possibility of settlement prior to litigation, and to assist the public entity in

12 financial planning and budgeting."  <u>Martineau</u>, 207 Ariz. at 335-36, 86 P.2d at 915-16.  A

13 notice of claim, therefore, must contain a statement of the facts that supports the basis for

14 liability and include a specific amount for which the claim can be settled.  A.R.S. § 12-

15 821.01(A).

16      Plaintiffs contend that they satisfied the statutory notice requirements by virtue of

17 plaintiff Fay Rogers' August 2, 2004 letter addressed to the City of Quartzsite and Ed Jaakola,

18 which provided:

19     After repeated instances of harassment by police and others either employed or
under contract by the City of Quartzsite of me and members of my family by

20     Officers Jason Perkinson and William Ponce, and Everett's Towing, and our
numerous complaints to Chief Jaekola (sic), Attorney Dan Field and members

21     of the City Council concerning the ongoing problems having been ignored, this
letter is to advise you that my family and I are seeking damages from all of you

22     in an amount exceeding $1 million.  If I do not hear from you concerning this
matter within 60 days of the date of this letter, it is my intention to file suit in

23     the United States District Court.

24 <u>Plaintiffs' Response</u> (doc. 68) exhibit 1.  Ms. Rogers attests that she attached to this letter

25 numerous complaints and witness statements describing in detail the nature of the incidents

26 underlying the claims.  <u>Id.</u> exhibits 2-3, 5-14.

27      Even if we assume that the alleged attachments to the August 2, 2004 notice letter

28 provide sufficient factual allegations to adequately inform the defendants of the nature of the

claims, plaintiffs' attempted notice fails to comply with § 12-821.01 in several respects. First, the letter was addressed to the City of Quartzsite and Ed Jaakola only. Therefore, from its face, the letter does not purport to provide notice to defendants Ponce, Perkinson, Field or Buckelew. Plaintiffs, nevertheless, argue that by virtue of the numerous complaints made to various individuals over the course of a year, the defendants "had an understanding of the claims against them." Plaintiffs' Response (doc. 68) at 9. This is not sufficient to satisfy the notice requirements. "Actual notice and substantial compliance do not excuse failure to comply with the statutory requirements of A.R.S. § 12-821.01(A)." Falcon, 213 Ariz. at 527, 144 P.3d at 1256.

Second, the notice letter was from Fay Rogers only and provides that she alone "intend[s] to file suit in the United States District Court." Although the notice letter states that "my family and I are seeking damages," no other plaintiff is identified. This letter cannot serve as notice that other plaintiffs intended to file a claim.

Third, the notice of claim statute requires that notice shall be filed "with the person or persons authorized to accept service for the public entity or public employee as set forth in the Arizona rules of civil procedure." A.R.S. § 12-821.01(A). If the public entity is a municipal corporation or other governmental subdivision, the persons authorized to accept service under Rule 4.1(i), Ariz. R. Civ. P., are either "the chief executive officer, the secretary, clerk, or recording officer thereof." Rogers contends that she delivered the notice letter by leaving a copy with an unidentified employee at the "walk-up window" of the Quartzsite Police Department and with Sharon Norris, an assistant to the town clerk. There is no evidence that either employee was authorized to accept service on behalf of the Town of Quartzsite or Police Chief Jaakola. Therefore, neither the Town nor Jaakola was effectively served with notice of the claim.

Fourth, Arizona law is clear that a notice of claim must include "a specific amount for which the claim can be settled and the facts supporting that amount." A.R.S. § 12-821.01(A). The Arizona Supreme Court recently held that the notice of claim statute clearly and unequivocally instructs claimants to not only "include a particular and certain amount of

1   money that, if agreed to by the government entity, will settle the claim," but also to "present

2   facts supporting that amount." <u>Deer Valley Unified Sch. Dist. v. Houser</u>, 214 Ariz. 293, ___,

3   152 P.3d 490, 493 (2007).  In other words, a claimant is required to "explain the amounts

4   identified in the claim by providing the government entity with a factual foundation to permit

5   the entity to evaluate the amount claimed."  <u>Id.</u>  The court explained that this requirement

6   "ensures that claimants will not demand unfounded amounts that constitute quick unrealistic

7   exaggerated demands." <u>Id.</u> (quotation omitted).  Rogers' demand for "an amount exceeding

8   $1,000,000" is not a "particular and certain amount" as required by the statute.  <u>Id.</u>  Further,

9   the notice letter does not provide *any* facts supporting the claimed amount.  Instead, this

10  demand is the kind of "quick unrealistic exaggerated demand" that the statute sought to avoid.

11      For all of these reasons, we conclude that plaintiffs have failed to comply with A.R.S.

12  § 12-821.01, and therefore all of the state law claims are barred.

13                          **III.  Section 1983 Claim**

14      The amended complaint alleges generally that this action is brought pursuant to 42

15  U.S.C. § 1983, <u>Amended Complaint</u> ¶ 1, and that plaintiffs enjoy "an absolute right to due

16  process, and to be free from false imprisonment and preventative detention pursuant to the

17  Fourth, Fifth, Ninth and Fourteenth Amendments of the United States Constitution," <u>id.</u> ¶ 37.

18  All plaintiffs allege in their first claim for relief (which we construe as a § 1983 claim) that

19  defendants' actions "deprived [them] of their constitutional freedom from unreasonable

20  searches and seizures, false imprisonment and right to due process."  <u>Id.</u> ¶ 38.

21                          **A.  Plaintiffs' Standing**

22      The Town Defendants first argue that plaintiffs Fay Rogers, Sarah Florian and Donna

23  Payne's claims should be dismissed because they lack standing to sue.  To meet Article III's

24  "case or controversy" requirement, each plaintiff must "show that [s]he personally has

25  suffered some actual or threatened injury as a result of the putatively illegal conduct of the

26  defendant, and that the injury fairly can be traced to the challenged action and is likely to be

27  redressed by a favorable decision." <u>Valley Forge Christian Coll. v. Americans United for Sep.</u>

28

1   of Church & State, Inc., 454 U.S. 464, 472, 102 S. Ct. 752, 758 (1982) (citations and internal

2   quotation marks omitted).

3        Members of Jerry Florian's family, including his mother, Fay Rogers, his sisters, Donna

4   Payne and Sarah Florian, join in the § 1983 claim against the Town Defendants.   They

5   describe their § 1983 claim as alleging a deprivation of their Fourth Amendment rights when

6   they witnessed the use of excessive force against Jerry Florian on July 14, 2004, resulting in

7   emotional distress damages.  See Plaintiffs' Response (doc. 92) at 5.  During the course of

8   conducting an investigatory stop on Jerry Florian on July 14th, Officers Ponce and Perkinson

9   drew their guns and batons, "sighted on Plaintiff Florian . . . and threatened to shoot [him]."

10  Amended Complaint ¶ 30.  There is no allegation that these plaintiffs were the subject of

11  either the attempted stop or the alleged use of excessive force.  Fourth Amendment rights are

12  personal rights and may not be vicariously asserted.  Moreland v. Las Vegas Metro. Police

13  Dept., 159 F.3d 365, 369 (9th Cir. 1998).  Witnessing the use of excessive force does not

14  confer standing to sue under § 1983.  See Palacios v. City of Oakland, 970 F. Supp. 732, 745

15  (N.D. Cal. 1997) (family members who witnessed use of excessive force have no standing to

16  assert Fourth or Fourteenth Amendment claims).  We conclude that Rogers, Payne and Sarah

17  Florian have no standing to assert § 1983 violations.

18       Fay Rogers also claims that she suffered damages when she was wrongfully deprived

19  of her personal property.  On February 7, 2004, Jerry Florian was arrested and the vehicle he

20  was driving, an ATV owned by Fay Rogers, was seized and impounded.  Rogers claims that

21  she incurred expenses in retrieving the vehicle.  It is not clear what constitutional right Rogers

22  claims was violated by this temporary seizure of her vehicle.  But even if we liberally construe

23  her claim to assert a Fourteenth Amendment substantive due process violation, we conclude

24  that her claim is without merit.  Substantive due process is ordinarily reserved for those rights

25  that are "fundamental."  Washington v. Glucksberg, 521 U.S. 702, 720-21, 117 S. Ct. 2258,

26  2267-68 (1997) (threshold requirement that a challenged state action implicate a fundamental

27  right "avoids the need for complex balancing of competing interests in every case").

28  Temporary custody of Rogers' vehicle incident to Florian's arrest does not rise to the level of

1  a constitutional deprivation of Rogers' property rights.  Moreover, Rogers' claim that she

2  incurred bail expenses on behalf of Jerry Florian, and travel expenses related to Florian's

3  criminal charges cannot serve as a basis for a § 1983 claim.  These damages are not derived

4  from any alleged violation of Rogers' constitutional rights.

5      We grant the Town Defendants' motion for summary judgment on all § 1983 claims

6  asserted by Sarah Florian, Donna Payne and Fay Rogers.

### B.  Qualified Immunity

### 1.  Defendants Ponce and Perkinson

9      Defendants Ponce and Perkinson claim that they are entitled to qualified immunity on

10  the § 1983 claims asserted by the remaining plaintiffs, Jerry Florian and Jacquelyn

11  Dunckhurst.  To determine whether an officer is entitled to qualified immunity, the court must

12  conduct a two-step analysis.  First, the court must decide whether, "[t]aken in the light most

13  favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct

14  violated a constitutional right."  Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156

15  (2001).  If the violation of a right is properly alleged, the court must then determine whether

16  that right was "clearly established" such that "it would be clear to a reasonable officer that his

17  conduct was unlawful in the situation he confronted."  Id. at 202, 121 S. Ct. at 2156.  If both

18  of these inquiries are answered in the affirmative, the officer is not entitled to qualified

19  immunity.  Id. at 201, 121 S. Ct. at 2156.  Qualified immunity protects "all but the plainly

20  incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341,

21  106 S. Ct. 1092, 1096 (1986).

22      As with any motion for summary judgment, a moving defendant bears the burden of

23  proof on the issue of qualified immunity and must produce sufficient evidence to require the

24  plaintiffs to go beyond their pleadings and produce evidence of their own.  Butler v. San

25  Diego Dist. Attorney's Office, 370 F.3d 956, 963 (9th Cir. 2004).  The defendant's burden is

26  to demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477

27  U.S. 317, 323, 106 S. Ct. 2548 (1986).  The Town Defendants fail to satisfy this initial

28  burden.

1      Without supporting argument, affidavits, or other evidence, the defendants simply

2  assert that Florian and Dunckhurst's § 1983 claims must fail because they have not identified

3  a violation of a specific constitutional right. Town Defendants' Motion (doc. 79) at 6-8. The

4  defendants contend that plaintiffs "refer in the abstract" to violations of their right to " 'liberty,'

5  'personal security from bodily injury,' and 'substantive due process,' " but that they "have

6  failed to articulate any fact-specific constitutional violation." Id. at 8 (emphasis in original).

7  This argument ignores the numerous allegations of specific constitutional violations asserted

8  against Ponce and Perkinson in the amended complaint. Specifically, the amended complaint

9  alleges that on several occasions the officers "invent[ed] a minor traffic infraction as an

10  excuse for stopping him," "violated the Fourth Amendment in illegally stopping and searching

11  [his] vehicle," "prepared fraudulent police reports," and presented perjured testimony before

12  grand juries.[4] Amended Complaint ¶ 23. Florian also asserts that on September 11, 2003,

13  Ponce and Perkinson "illegally stop[ped] and search[ed] [him], and . . . falsely arrest[ed] him

14  without any probable cause." Id. ¶ 27. On February 7, 2004, the officers again "falsely

15  arrested" him and "committed a battery" by repeatedly beating him with a baton while

16  effecting the arrest. Id. ¶ 28. Florian claims that on February 7, 2004, the officers "planted

17  an illegal substance among [his] clothing." Id. ¶ 29. And on September 25, 2004, Officer

18  Ponce conducted another stop without justification and illegally searched his car, leading to

19  the arrest of Florian and Dunckhurst. Id. ¶ 32. Jacquelyn Dunckhurst's § 1983 claim arises

20  from this arrest.[5]

21      Defendants do not argue in their motion for summary judgment that the challenged

22  stops and arrests were supported by reasonable suspicion and probable cause, and therefore

23  not in violation of plaintiffs' constitutional rights. Nor do they argue that the use of force in

24  _____

25      [4]Plaintiffs now concede that defendants are entitled to absolute witness immunity

26  regarding their testimony before the grand juries. Plaintiffs' Response (doc. 92) at 5.
   Therefore, we grant defendants' motion for summary judgment on this claim.

27      [5]Because Officer Perkinson is not alleged to have participated in Dunckhurst's arrest,

28  she has standing to assert her § 1983 claim against Officer Ponce only.

1  connection with Florian's February 7, 2004 arrest was constitutionally reasonable.  Instead,

2  defendants simply contend that plaintiff's allegations are "conclusory," asserting only "general

3  constitutional guarantees."   Town Defendants' Motion (doc. 79) at 7.  This perfunctory

4  argument is insufficient to support their motion for summary judgment.  Because defendants

5  have failed to come forward with any evidence to support their argument that plaintiffs have

6  not identified a violation of their constitutional rights,[6] plaintiffs are entitled to rely on the

7  allegations contained in their pleadings, which we find more than sufficient to satisfy the first

8  prong of the Saucier analysis.

9       We now turn to the question of whether these rights were clearly established at the time

10  of the alleged misconduct.  The "dispositive inquiry in determining whether a right is clearly

11  established is whether it would be clear to a reasonable officer that his conduct was unlawful

12  in the situation he confronted."  Saucier, 533 U.S. at 202, 121 S. Ct. at 2156.  In support of

13  their qualified immunity claim, Ponce and Perkinson do not argue that the law prohibiting

14  their challenged conduct was not clearly established.  In fact, defendants do not even discuss

15  the specific conduct at issue.  Instead, they simply argue that the two cases cited by plaintiffs

16  are inapposite, and that accordingly the plaintiffs have failed to satisfy their burden of

17  showing that the law was clearly established.

18       Notwithstanding plaintiffs' failure to cite the most recent and relevant caselaw, we have

19  no difficulty in concluding that clearly established laws prohibit stops based on fabricated

20  traffic infractions and arrests without probable cause.  See Beck v. State of Ohio, 379 U.S. 89,

21  91, 85 S. Ct. 223, 225-26 (1964) (holding that a warrantless arrest must be supported by

22  probable cause); Devereaux v. Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (holding that

23  there is a clearly established constitutional right "not to be subjected to criminal charges on

24

25       [6]Defendants proffered a police expert report, ostensibly for the purpose of showing

26  that they reasonably believed their conduct was lawful.  We conclude infra at 10-11 that

27  defendants' cursory reference to the report without any argument is insufficient to support

their claim.  It is similarly insufficient to establish plaintiffs' failure to assert a constitutional

28  violation.

1  the basis of false evidence that was deliberately fabricated by the government").  Moreover,

2  clearly established laws also prohibit an officer's use of excessive force.  See Graham v.

3  Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871 (1989) (holding that an excessive force

4  analysis requires "balancing of the nature and quality of the intrusion on the individual's

5  Fourth Amendment interests against the countervailing governmental interests at stake" to

6  determine whether the force used was objectively reasonable under the circumstances").

7       Defendants argue that they are nevertheless entitled to qualified immunity because they

8  reasonably believed their conduct was lawful.  However, without discussing any particular

9  challenged conduct, defendants simply assert that the "conduct at issue" was lawful.  Town

10 Defendants' Motion (doc. 79) at 10-11.  In support of this claim, Officers Ponce and Perkinson

11 submit their own affidavits in which they aver that "[a] reasonable officer could have believed

12 that the particular conduct at issue by the officer(s) involved in these incidents was lawful."

13 Town Defendants' SOF, Exhibits 7, 8.  These broad, conclusory, self-serving statements add

14 little, if anything, to the analysis.

15      Defendants also refer to a report by police expert Jim Humphrey to support their

16 argument that the defendants' conduct was reasonable.  Other than a cursory reference to the

17 report, Reply (doc. 91) at 8, defendants offer no discussion or analysis whatsoever regarding

18 the import of the report.  This superficial analysis of the qualified immunity defense is an

19 insufficient basis upon which to support a motion for summary judgment.  Accordingly, we

20 deny Ponce and Perkinson's motion for summary judgment on the basis of qualified immunity.

21              **2.  Defendant Police Chief Jaakola**

22      Florian[7] claims that Police Chief Jaakola is individually liable under § 1983 for his

23 failure to prevent the ongoing harassment by Ponce and Perkinson.  He claims that Jaakola

24

---

25            [7]Dunckhurst has no standing to join in Florian's claim against Jaakola, which is based
26  on Jaakola's knowledge of an ongoing harassment campaign against Florian.  Dunckhurst
    was arrested on only one occasion and there is no allegation that Jaakola participated in
27  Dunckhurst's arrest.  Therefore, Jaakola's motion for summary judgment on Dunckhurst's §
28  1983 claim is granted.

was aware of the ongoing unlawful conduct, but failed to investigate the complaints or to take any corrective action. Amended Complaint ¶ 35.

Respondeat superior liability cannot give rise to a claim under § 1983. Monell v. Dept. of Soc. Servs. of City of New York, 436 U.S. 658, 691-92, 98 S. Ct. 2018, 2036-37 (1978). However, a supervisor is liable under § 1983 "if [he] participated in or directed the [constitutional] violations, or knew of the violations and failed to act to prevent them." Hydrick v. Hunter, 466 F.3d 676, 689 (9th Cir. 2006) (citation omitted). "At this early stage of the proceedings, [a plaintiff] does not need to show with great specificity how each defendant contributed to the violation of his constitutional rights. Rather, he must state the allegations generally so as to provide notice to the defendants and alert the court as to what conduct violated clearly established law." Preschooler II v. Clark County Sch. Bd. of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007) (considering qualified immunity on a motion to dismiss).

Florian proffers numerous emails, letters and formal complaints submitted to Jaakola, informing him of the alleged unlawful activities of Ponce and Perkinson. He asserts that Jaakola had a duty to properly train and supervise his subordinates, but failed to take any action to investigate or control the officers. These allegations are sufficiently specific to satisfy the first prong of the Saucier analysis.

It is clearly established that a supervisor is liable in his individual capacity "for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." Id. at 1183 (quotation omitted). If proven true, plaintiff's allegations–that Ponce and Perkinson were conducting an unconstitutional harassment campaign against Florian, which Jaakola was aware of yet failed to prevent–would establish that Jaakola is liable for the violation of Florian's clearly established constitutional rights. Jaakola's motion for summary judgment on Florian's § 1983 claim is denied.

**3. Defendant Dan Field**

1    Although plaintiffs include Quartzsite Town Manager Dan Field in the § 1983 claim
2 against "all defendants," there are no specific § 1983 allegations against him.  There is no
3 indication what authority Field held in his role as Town Manager or what part he played in
4 the alleged deprivation of plaintiffs' constitutional rights.  Accordingly, plaintiffs' allegations
5 fail to establish that Field's conduct violated their constitutional rights.  Therefore, we grant
6 summary judgment in favor of Field on the § 1983 claim.  See Brittain v. Hansen, 451 F.3d
7 982, 988 (9th Cir. 2006) (holding that if no constitutional right would have been violated
8 based on plaintiff's allegations, there is no necessity for further inquiry concerning qualified
9 immunity).

10              **C.  Municipality Liability–Defendant Town of Quartzsite**

11    Plaintiffs similarly group the Town of Quartzsite with "all defendants" in asserting
12 their § 1983 claim, but they wholly fail to describe the nature of the Town's § 1983 liability.
13 To prevail on a § 1983 claim against a municipality, plaintiffs are required to establish that
14 the Town had a deliberate policy, custom, or practice that was the "moving force" behind the
15 constitutional violation they suffered.   Monell, 436 U.S. at 694-95, 98 S. Ct. at 2038.
16 Inadequate police training may be said to represent municipal policy and serve as a basis for
17 § 1983 municipal liability where the "failure to train amounts to deliberate indifference to the
18 rights of persons with whom the police come into contact."  City of Canton v. Harris, 489 U.S.
19 378, 388, 109 S. Ct. 1197, 1204 (1989) (holding that failure to train may serve as the basis for
20 § 1983 liability "[o]nly where [it] reflects a 'deliberate' or 'conscious' choice by a
21 municipality–a 'policy' as defined by our prior cases"); Long v. County of Los Angeles, 442
22 F.3d 1178, 1186 (9th Cir. 2006) (citing Canton, 489 U.S. at 388, 109 S. Ct. at 1204).  For this
23 policy to be the "moving force" behind the deprivation, the plaintiff must prove that "the
24 injury would have been avoided had proper policies been implemented."  Id. at 1190 (quoting
25 Gibson v. County of Washoe, 290 F.3d 1175, 1196 (9th Cir. 2002)).

26    Plaintiffs do not refer to the Town's training policies or otherwise allege that the Town
27 had a policy, custom, or practice that was the "moving force" behind a deprivation of their
28 constitutional rights.  Plaintiffs' separate claim for "failure to properly hire, train and

1  supervise" in count four of the amended complaint, which is asserted as a state law tort claim,

2  does not serve to buttress their § 1983 claim in count one.  By wholly failing to allege that a

3  policy, custom or practice was moving force behind the deprivation of their constitutional

4  rights, plaintiffs' claim against the Town of Quartzsite must fail.  Accordingly, the Town's

5  motion for summary judgment is granted.

6  ### D.  Absolute Immunity–Defendant County Attorney Buckelew

7  La Paz County Attorney R. Glenn Buckelew moves for summary judgment on the basis

8  of prosecutorial immunity.  Prosecutors are accorded absolute immunity for their acts

9  intimately associated with the judicial process.  Burns v. Reed, 500 U.S. 478, 486, 111 S. Ct.

10  1934, 1939 (1991).  "[I]n determining immunity, we examine the nature of the function

11  performed, not the identity of the actor who performed it."  Kalina v. Fletcher, 522 U.S. 118,

12  127, 118 S. Ct. 502, 508 (1997) (citation omitted).  Thus, a prosecutor enjoys absolute

13  immunity from claims alleging that he maliciously initiated a prosecution, used perjured

14  testimony at trial, or suppressed material evidence, Imbler v. Pachtman, 424 U.S. 409, 431,

15  96 S. Ct. 984, 996 (1976), and for preparing and filing charging documents, Kalina, 522 U.S.

16  at 130, 118 S. Ct. at 509-10.  In determining immunity, we accept the allegations in plaintiffs'

17  complaint as true.  Id. at 122, 118 S. Ct. at 505.

18  Plaintiffs allege that Buckelew procured multiple indictments against Florian and one

19  against Dunkhurst based on police records that Buckelew knew to be false, thereby

20  intentionally misleading grand juries in order to obtain indictments.[8]  An essential function

21  of Buckelew's role as county attorney was to file charges and/or obtain indictments based on

22  arrest reports submitted by various law enforcement agencies.  It is well established that "a

23  prosecutor's professional evaluation of the evidence assembled by the police is entitled to

24

25  _____

26  [8]Buckelew argues that plaintiffs Fay Rogers, Sarah Florian and Donna Payne lack standing to assert claims against him.  Plaintiffs do not respond to this argument.  Buckelew's only role was to present indictments against and evaluate prosecution of Jerry Florian and Jacquelyn Dunckhurst.  Therefore, Fay Rogers, Sarah Florian and Donna Payne have no standing to assert claims against Buckelew, and accordingly these claims are dismissed.

1  absolute immunity."  Roe v. City & County of San Francisco, 109 F.3d 578, 584 (9th Cir.

2  1997).  This immunity extends to prosecutorial conduct before grand juries.  See Burns v.

3  Reed, 500 U.S. at 490 n.6, 111 S. Ct. at 1941 n.6.  Buckelew's conduct before the grand jury,

4  including his reliance on the alleged fraudulent police reports is intimately associated with the

5  judicial process, and as such is entitled to qualified immunity.

6         Plaintiffs attempt to avoid the absolute immunity defense by arguing that Buckelew

7  acted outside the scope of his prosecutorial functions by "participating in the investigation."

8  As evidence of this involvement, plaintiffs refer to a statement by a defense expert witness

9  that "Defendants Ponce and Perkinson report these particular charges were filed based on

10  instructions from then La Paz County Attorney Glenn Buckelew."  PSOF at 7.  But the

11  decision whether to file certain charges is central to the task of initiating a prosecution, and

12  as such is entitled to absolute immunity protection.  See, e.g., Mishler v. Clift, 191 F.3d 998,

13  1008 (9th Cir. 1999) (holding that "[f]iling charges and initiating prosecution are functions

14  that are integral to a prosecutor's work"); Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir.

15  1992) (holding that a prosecutor is absolutely immune from liability in causing a law

16  enforcement officer to file charges).

17         Plaintiffs also argue that Buckelew's involvement in this case expanded beyond his

18  prosecutorial role.  Prosecutors are entitled to qualified immunity, rather than absolute

19  immunity, when they perform administrative duties or investigatory functions "that do not

20  relate to an advocate's preparation for the initiation of a prosecution or for judicial

21  proceedings."  Buckley v. Fitzsimmons, 509 U.S. 259, 273, 113 S. Ct. 2606, 2615 (1993).

22  First, without any evidentiary support, plaintiffs claim that "as the La Paz County Attorney,

23  [Buckelew] was the designated head of the La Paz County Task Force and would have been

24  responsible for initiating . . . an investigation."  Plaintiffs' Response (doc. 85) at 4.  Not only

25  is there no evidence to support this claim, but plaintiffs fail to describe how Buckelew was

26  actually involved in any investigation.

27                                    **IV.  Conclusion**

28

1    In sum, all claims asserted by plaintiffs Fay Rogers, Donna Payne, Sarah Florian and

2  Zachary Florian are dismissed.  All claims asserted against defendants R. Glenn Buckelew,

3  Daniel Field and the Town of Quartzsite are dismissed.  All state law claims are dismissed

4  against all defendants.   The only claims remaining are Jerry Florian and Jacquelyn

5  Dunckhurst's § 1983 claims against Ponce, and Florian's § 1983 claim against Perkinson and

6  Jaakola.

7    Therefore, **IT IS ORDERED GRANTING** Town Defendants' motion for partial

8  summary judgment (doc. 65).

9    **IT IS FURTHER ORDERED GRANTING IN PART AND DENYING IN PART**

10  Town Defendants' motion for summary judgment on the remaining claims (doc. 79).

11    **IT IS FURTHER ORDERED GRANTING** Buckelew's motion for summary

12  judgment (doc. 77).

13    Plaintiffs are again advised to seek the advice of counsel, particularly as the trial date

14  draws near.  If they cannot find a lawyer, they may wish to contact the Lawyer Referral

15  Service of the Maricopa Bar Association at 602-257-4434, or the Volunteer Lawyers Program

16  sponsored by Community Legal Services at 602-258-3434.  Without a lawyer, plaintiffs run

17  the risk of violating the rules and having judgment entered against them.

18    DATED this 3rd day of May, 2007.

Frederick J. Martone
United States District Judge